## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

```
***********************************
SHANNON L. CALHOUN              *
                               *
        V.                     *        CASE NO.  3:18 CV 1203 (DJS)
                               *
CHRISTOPHER J. BORONA, ET AL.  *        October 28, 2020
***********************************
```

## PLAINTIFF'S MEMORANDUM SUPPORTING HIS OBJECTION TO THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

The plaintiff, Mr. Shannon L. Calhoun, asserts that the defendants are not entitled to summary judgment and are not entitled to qualified immunity as there were no exigent circumstances to justify the warrantless search and seizure carried out in this case. Moreover, there are genuine issues of material fact that exist in this case sufficient to be tried.

## I.      Facts:

The Bridgeport Police Department responded to a CVS drug store on the night of April 13, 2016 in Bridgeport, Connecticut because of an allegation by only two of three women in a car that Mr. Calhoun had made a threat and broken a window of the car with a gun in which they were located.  An off duty police officer called the police department on the night of April 13, 2016 and stated that she heard shots fired near her Bridgeport home that she testified was located on one of the "off streets" near Main Street; but never testified as to her home's proximity or location relative to the CVS or the alleged gunshots.  The off duty officer also claimed to have seen a black SUV traveling at a high rate of speed, however when the police arrived at Mr. Calhoun's home they discovered a black BMW sedan, not a SUV, parked in front of his Ridgewood Place home.    However, none of the women witnesses said that shots were fired during the claimed incident and none said that Mr.

Calhoun was shot or injured in their presence.  Further, no shell casings were found at either the CVS or anywhere around Mr. Calhoun's mother's home.    Mr. Calhoun did not hear gun shots fired in his vicinity at any  time on the night of April 13, 2016.  Further, no shell casings were found at either the CVS or anywhere around Mr. Calhoun's mother's home. The police were outside of the plaintiff's mother's home for 20 minutes prior to forcing entry into the home.[1]

While the police were outside of Mr. Calhoun's home at 49 Ridgewood Place, Bridgeport, Connecticut looking for evidence before entering the home they did not hear any sounds of gun shots and/or distress from anyone or anyone yelling for assistance made from within the home.  Contrary to the testimony of the defendants saying that they saw a trail of blood leading from the plaintiff's car to his home and that there was blood on the home's screen door; the Police Department's Evidence Team went to the residence during the day time hours on April 14, 2016 and it only found one speck of blood at the premises.  Police placard number 101 was placed outside of the premises behind the only blood identified by the Police Department's Evidence Team found at the 49 Ridgewood Place home as shown in photos (Defense Ex. 521 & 522).   During the suppression hearing co-defendant Off. Blackwell was shown several daytime and nighttime photographs taken on April 13, 2016 and April 14, 2016 of the street in front of 49 Ridgewood Place, the exterior of the BMW, the sidewalk in front of, the driveway apron of, the driveway of, and the porch of 49 Ridgewood Place he was unable to identify any blood in those pictures.[2]

---

[1] (2/7/17 Suppression Hearing Transcript, pp. 7-11, 16, 27 & 103-104, Testimony of Det. Dennis Martinez, Mark Blackwell, and Off. Laura Azevedo), Plaintiff's Ex. E, Doc. 28.  Affidavit of Shannon L. Calhoun in opposition to summary judgment, ¶'s 2 & 13.

[2] Affidavit of Shannon L. Calhoun in opposition to summary judgment, ¶'s 4, 11, 12 & 17.  [02/07/2017 Suppression

There was no commotion, ruckus, crash, or noise of any kind coming from the second floor unit numbered 49 Ridgewood Place for the 20 minutes that other officers and he were outside of the home even after Off. Blackwell pounded on the door of the residence and announced that he was a police officer for five minutes.   Co-defendant Det. Borona subsequently arrived at the scene and that upon his arrival he was the most senior peace officer present.   Det. Borona testified that he did not hear any noises, commotion, yelling, moans, or anything breaking within the second floor unit of 49 Ridgewood Place upon his appearance at the residence.   Det. Borona testified that he made the decision to kick in the front door of the residence in less than a minute after his arrival to 49 Ridgewood Place.   He testified that he got permission to force entry into the home from his superior co-defendant Sgt. Joseph Morales.   He testified that afterwards he kicked open the wooden front door, then announced they were the police, and then went up the interior steps to the plaintiff's apartment either preceded or immediately followed by a Bridgeport Police Department K-9 and then entered the plaintiff's apartment.   However, co-defendant Det. Martinez testified two times that before Det. Borona decided to breach the doorway he had actually entered the lower exterior door and went up to the second floor before he decided to breach the doorway and before he actually breached the doorway.   Mr. Calhoun did not supply the defendants with consent to enter or search his mother's home where he was living at the time.[3]

Det. Borona testified on direct exam that he did a protective sweep of only two rooms, bathroom, and front bedroom of the residence.   However, in October of 2016 Borona

---

Hearing Transcript, p. 28-31, 32-35 & 36-37 (Testimony of Officer Mark Blackwell), Plaintiff's Exhibit "E," Doc. 28].
[3] [02/07/2017 Suppression Hearing Transcript, p. 19, 36, 37, 59-61, 68, 74-75 & 106-107 (Testimony of Officer Mark Blackwell, Det. Christopher Borona, and Det. Dennis Martinez), Plaintiff's Exhibit "E," Doc. 28].  Affidavit of Shannon L. Calhoun in opposition to summary judgment, ¶'s 3 & 5.

met with a federal prosecutor and a FBI agent Oppenheim and told them that he had also done a protective sweep of a far bedroom and found a firearm in a doorless closet. Borona admitted under cross that he neglected to testify on direct that he went to a far bedroom in the rear of the apartment. Det. Borona stated that he did not write a report about a gun he found or observed in a rear bedroom. Det. Borna stated that he did not know whether or not Mr. Calhoun's hands were tested for the presence of gunshot residue. During the search of the apartment the officers located several objects and then stated, "Let's put everything back until we get a warrant." All of the items they located were placed back into the places searched. At no time on April 13, 2016, did any of the defendants protect Mr. Calhoun or his interests from the actions of the other defendants.[4]

Thereafter, on April 13, 2016, Mr. Calhoun was arrested and taken into custody. On May 10, 2016 he was indicted on two felony drug charges and two felony weapon offenses. Mr. Calhoun filed a motion to suppress all of the evidence seized at his home. After a suppression hearing the federal criminal court found that there was no exigency to justify the warrantless forced entry and search of Mr. Calhoun's home and suppressed all of the evidence. The federal trial court also found that Det. Borona's allegation that he believed that there was a real emergency/exigency to justify the forced entry and search was not credible. Mr. Calhoun remained in custody from April 13, 2016 until July 17, 2017.[5]

The Office of the U.S. Attorney initially appealed the criminal trial court ruling, then withdrew the appeal, moved to dismiss the criminal charges, and entered a voluntary

---

[4] [02/07/2017 Suppression Hearing Transcript, p. 71-72 and 77-78 (Testimony of Det. Christopher Borona), Plaintiff's Exhibit "E," Doc. 28]. Affidavit of Shannon L. Calhoun in opposition to summary judgment, ¶'s 6-8, 19.

[5] Affidavit of Shannon L. Calhoun in opposition to summary judgment, ¶ 14-15, 26-27, & 30-33. (Plaintiff's Ex. B, pp. 6n.8, & 7-8, Doc. 25)

dismissal of the appeal.[6]

## II.    Standard of Review:

In passing upon a party's motion for summary judgment the court's responsibility is issue finding, not issue resolution.   Fariello v. Campbell, 860 F. Supp. 54, 64 (E.D.N.Y. 1994).   The defendants herein being the movants, bear the burden of initially showing the absence of a genuine issue of material fact as to the nonexistence of probable cause and any exception to that absence to justify the legality of the warrantless search and seizure of evidence within Mr. Calhoun's home and his person.   This burden is satisfied where the movant merely demonstrates that there is no evidence to support the non-moving party's case.   Thereafter, it is then the office of the non-moving party, Mr. Calhoun, to shoulder the burden of production of specific facts illustrating that there is a genuine issue for trial.   Jaffer V. Hirji, 887 F. 3rd 111, 114 (2nd Cir. 2018). The trial court is to review de novo the award of summary judgment,  by construing the evidence in the light most favorable to the nonmoving party, herein Mr. Calhoun and then draw all reasonable inferences and resolving all ambiguities in his favor.   Id. at 114. In deciding the issue of summary judgment, the trial court is to determine if there is sufficient evidence favoring the party not seeking summary judgment for a jury to find for that non-moving party.

## III.    Argument:

**A.    The defendants violated Mr. Calhoun's Federal and State Constitutional protections against warrantless entry into his home since both probable cause and exigent circumstances were absent hence; neither summary judgment nor qualified immunity attend.**

**1. Exigent circumstances.**

---

[6] Plaintiff's Ex. G, Doc. 30.  Plaintiff's Ex. H, Doc. 34.  Plaintiff's Ex. I, Doc. 31. Plaintiff's Ex. J, Doc. 32. Plaintiff's Ex. K, Doc. 33.

## A.  Article First, Section 7 of the Connecticut Constitution

Contrary to the defendants' assertion that exigent circumstances are treated the same under both the 4th Amendment and Art. I, § 7 of the Connecticut Constitution[7]; Connecticut Supreme Court precedent disagrees.  In the case of  State v. Buie, 312 Conn. 574, 584, 94 A.3d 608, 613 (2014), the  Connecticut Supreme Court made it clear that certain privacy rights under Art. I, § 7 of Connecticut's Constitution provide more protection to citizens than the 4th Amendment by citing the following cases:  State v. Geisler, 222 Conn. 672, 691-96 (1992) (emergency exception to warrant requirement is narrower under article first, § 7, than under federal constitution).  In Geisler, 222 Conn. at 696 n.16 the Connecticut Supreme Court also stated that, "We emphasize that our decision in this case rests on article first, § 7 of the Connecticut constitution. See Michigan v. Long, 463 U.S. 1032, 1041-42, 103 S. Ct. 3469, 77 L. Ed. 2d 1201 (1983)"[,]  State v. Davis, 283 Conn. 280, 320, 929 A.2d 278 (2007) (Under Art. I, § 7, the state supreme Court has been willing to recognize a broader right to privacy under the state constitution); State v. Miller, 227 Conn. 363, 377, 630 A.2d 1315 (1993) (Art. I, § 7, requires police to obtain warrant to search impounded automobile); State v. Marsala, 216 Conn. 150, 171, 579 A.2d 58 (1990) (good faith exception to warrant requirement does not exist under Art. I, § 7, of state constitution); and State v. Dukes, 209 Conn. 98, 120-21, 547 A.2d 10 (1988) (search incident to arrest exception to warrant requirement is narrower under Art. I, § 7, than under the federal constitution).  Further, the defendants were incorrect to assert in their memorandum that under Connecticut law the exigent circumstances doctrine must be supported by an officer's "reasonable belief" that

---

[7] Defendants' Memorandum in Support of Summary Judgment, Doc. 66-1, pp. 7-8.

immediate action is necessary" citing State v. Kendrick, 314 Conn. 212, 225 (2014).[8]

First of all, unlike Geisler, 222 Conn. at 696 n.16, Kendrick was not founded on Art. I, § 7 of the Connecticut Constitution.  The Kendrick Court singularly relied upon the 4th Amendment in explaining the scope and elements of the exigent circumstances doctrine. There is no probable cause element to the exigent circumstances doctrine analysis required under Art. I,§ 7 of Connecticut's Constitution articulated in either Kendrick,  Geisler, or Buie.

Under Art. I, § 7, the Connecticut Supreme Court ruled that "[t]he test of exigent circumstances for the making of an arrest for a felony[9] without a warrant . . . is whether, under the totality of the circumstances, the police had reasonable grounds to believe that if an immediate arrest were not made, the accused would be able to destroy evidence, flee or otherwise avoid capture, or might, during the time necessary to procure a warrant, endanger the safety or property of others. This is an objective test; its preeminent criterion is what a reasonable, well-trained police officer would believe, not what the arresting officer actually did believe."  State v. Guertin, 190 Conn. 440, 453, 461 A.2d 963, 970 (1983) (Footnote omitted, emphasis in original) relying upon State v. Canby, 252 S.E.2d 164, 167 n.2 (W. Va. 1979) (Decided on the basis of the West Virginia constitution.)  "Canby further cautions that unnecessary police-created exigencies are not legitimate exceptions to the warrant requirement." Id.  Hence Guertin, in its under Art. I, § 7 analysis, rejected the Dorman v. United States, 435 F.2d 385 (D.C. Cir. 1970) test for exigency upon which the tests in U.S. v. MacDonald, 916 F. 2d 766, 769 (2d Cir. 1990) and Harris v. O'Hare, 77  F.3d 224, 234 (2d

---

[8] Defendants' Memorandum in Support of Summary Judgment, Doc. 66-1, pp. 8-9.
[9] "The [exigency] exception is limited to the investigation of serious crimes; misdemeanors are excluded."  State v. Guertin, 190 Conn. 440, 453, 461 A.2d 963, 970 (1983).

Cir. 2014) were based.

The first element under the Guertin test is what type of crime is being investigated; a misdemeanor or felony.  In Mr. Calhoun's case, the police were told that he allegedly threatened three women and used an object that looked like a gun to smash the window of a car in which the women were located.[10]   Under the circumstances of this interaction the misdemeanor of Threatening under § 53a-62 CGS could have been involved.  The allegation of smashing the widow of the car could be covered by the charges of Criminal Mischief 2°-- § 53a-116 CGS, Criminal Mischief 3°--§ 53a-117 CGS, or  Criminal Mischief °--§ 53a-117 CGS all of which are misdemeanors.  If the alleged damage to the window of the car exceeded $1,500.00 Mr. Calhoun could have charged with Criminal Mischief 1°--§ 53a-115 CGS, a felony but evidence of damage value was not the subject of testimony in Mr. Calhoun's federal criminal case.  The witnesses who were in the attacked car alleged that Mr. Calhoun had a gun at the CVS pharmacy.   However, there was no testimony at the suppression hearing as to whether or not Mr. Calhoun was a prohibited person or had a permit for the gun.  Hence, the possession of a gun claim does not translate into a probable cause for an arrest on a felony charge.

The second element under the Guertin test is "whether, under the totality of the circumstances, the police had reasonable grounds to believe that if an immediate arrest were not made, [Mr. Calhoun] would be able to destroy evidence, flee or otherwise avoid capture[.]"  Guertin, 190 Conn. at 453.  There was no immediacy to justify the warrantless entry in the Mr. Calhoun's home.  At approximately **10:16 pm** two calls were made to 911

---

[10][02/07/2017 Suppression Hearing Transcript, pp. 99, 108, (Testimony of Detective Dennis Martinez), Plaintiff's Exhibit "E," Doc. 28].

asserting one averring that a man had threatened a woman in a car, smashed her window with a gun, and fled in black BMW.  The caller said she left the area and heard shots fired behind her.  An off duty officer who lived in the area called 911 and reported she heard shots fired and saw a black SUV drive quickly down a street.  Within several minutes of the police interviewing the witnesses at CVS who claimed that Mr. Calhoun was the person who threatened them and broke the driver's side window.  The witness gave the police Mr. Calhoun name, address, and the license plate number of the BMW he was driving.  The BMW was a sedan not a SUV. The home address was approximately a block away from CVS.[11]  Shortly after the 911 calls were made two police officers arrived at Mr. Calhoun's home and subsequently Off. Blackwell arrived where a black BMW, with its hood still warm, was parked outside of the home.[12]  The police looked around the outside of plaintiff's mother's home for approximately 15 minutes and found no shell casings.  Off. Blackwell spent another approximate 5 minutes pounding on Mr. Calhoun's exterior front door to his home and received no response.  [02/07/2017 Suppression Hearing Transcript, pp. 16 & 27 (**Testimony of Officer Mark Blackwell**), Plaintiff's Exhibit "E," Doc. 28].  Thereafter, co-defendant Borona arrived, within a minute thereafter decided to obtain permission from his supervisor, co-defendant Sgt. Joseph Morales, to kick the front door in, obtained that permission, kicked the front door open, preceded or followed a Bridgeport Police Department K-9 into Mr. Calhoun's home, searched the home, found contraband, and

---

[11] [Judge Underhill's "Amended Ruling and Order on Motion to Suppress," at pp. 2-4, Plaintiff's Exhibit "B," Doc. 25;  02/07/2017 Suppression Hearing Transcript, pp. 41 & 100, (Testimony of Off. Blackwell and Det. Martinez), Plaintiff's Exhibit "E," Doc. 28].
[12] [Judge Underhill's "Amended Ruling and Order on Motion to Suppress," at p. 4 n.5, Plaintiff's Exhibit "B," Doc. 25.]

arrested Mr. Calhoun at approximately **10:38 pm**.[13]

The defendants did not have reasonable grounds to believe that if an immediate <u>arrest</u> were not made, Mr. Calhoun would be able to destroy evidence, flee or otherwise avoid capture.  An <u>immediate</u> arrest of Mr. Calhoun was not needed under the totality of the circumstances in this case.  Something far short of and far less constitutionally invasive than an arrest, like a <u>stake-out</u> while the officers obtained a warrant was appropriate.  The destruction of evidence prong does not apply.  "[T]he destruction of evidence exception applies most naturally to those circumstances where narcotics or some other easily destructible piece of evidence is at issue, in contrast to the [firearm] that officers perhaps hoped they would find[.]" ("Destruction of evidence issues probably occur most frequently in drug cases because drugs may be easily destroyed by flushing them down a toilet or rinsing them down a drain." <u>Scott v. City of Mt. Vernon</u>, 2017 U.S. Dist. LEXIS 47856 *41-43. Citing, <u>Rogers v. Apicella</u>, 606 F. Supp. 2d 272, 290 (D. Conn. 2009) (weapons and ammunition not as easily destroyed, putting at issue whether police reasonably could have feared evidence destruction).    The plaintiff asserts that the defendants had no objectively the police had reasonable grounds to believe that the gun claimed to have been used by Mr. Calhoun would be subject of destruction before they could obtain a search and or arrest warrant.  Additionally, the defendants did not have an objectively reasonable belief that an immediate arrest of Mr. Calhoun was necessary to prevent him from fleeing or otherwise avoiding capture.

There was no serious risk of escape or threat to the personal safety of anyone inside of Mr. Calhoun's home.  Since police were stationed at the home overnight after Mr. Calhoun

---

[13] [02/07/2017 Suppression Hearing Transcript, p. 53, (Testimony of Det. Borona), Plaintiff's Exhibit "E," Doc. 28].

was arrested they certainly could have stationed in the front and back of the home before the breach to prevent Mr. Calhoun from leaving until they obtained a warrant.   The federal criminal trial court said as much at the suppression hearing:  "THE COURT: A reasonable police officer at that point sits at the front door and sits at the back door and calls up the Court. Why? Because there are, at most, seven drops of blood here. He's not going to bleed out at that rate very quickly." [02/07/2017 Suppression Hearing Transcript, pp. 149, Plaintiff's Exhibit "E," Doc. 28].

Finally, no immediate arrest was objectively reasonable in this case to preclude Mr. Calhoun from endangering the safety or property of others.   Under Art. I, § 7 of Connecticut's Constitution, "the rationale for this very limited exception, [to wit, the exigent circumstances doctrine] the state actors making the search must have reason to believe that life or limb is in immediate jeopardy and that the intrusion is reasonably necessary to alleviate the threat. The police, in  order to avail themselves of this exception, must have valid reasons for the belief that an emergency exists, a belief that must be grounded in empirical facts rather than subjective feelings. It is an objective and not a subjective test. The test is not whether the officers actually believed that an emergency existed, but whether a reasonable officer would have believed that such an emergency existed." Geisler, 222 Conn. at 691-692. (Emphasis added)

Exigent circumstances to enter a home without a warrant require dire events of an ilk that did not exist in Mr. Calhoun's case.  See, e.g., Deloreto v. Karengekis, 104 F. App'x 765 (2d Cir. 2004) (exigent circumstances when police knew the individual had mental problems and had been the subject of an emergency psychiatric evaluation, weapons were involved, the individual's parents were the victims, possibly hostages, and the individual stated he

wished to kill the Wethersfield police); Anthony v. City of New York, 339 F.3d 129 (2d Cir. 2003) (exigent circumstances when a 911 call from inside the house indicated that an armed man was committing a violent crime against the caller); Ostroski v. Town of Southold, 443 F. Supp. 2d 325 (E.D.N.Y. 2006) (exigent circumstances existed for police to search and seize firearm when police responded to 911 call about a domestic disturbance between two siblings who were allegedly going to retrieve weapons located on the premises).

In the instant case, no harm to Mr. Calhoun was imminent or urgent in the sense that something dangerous was happening at the time the officers arrived at his home. Although the police did have information that allegedly Mr. Calhoun had a gun, was allegedly involved in an act of violence against three individuals away from his home, only a miniscule amount of blood was found in his car, only a speck of blood found on his walkway; and approximately more than twenty-five minutes elapsed between the event at CVS and the co-defendants kicking in Mr. Calhoun's front door.  This evidence is not sufficient to meet the "heavy burden" of justifying a warrantless entry on summary judgment under the exigent circumstances exception.  There was no reasonably objective evidence that Mr. Calhoun or a third party was in danger while he was in his apartment.  The situation at CVS  had ended approximately twenty-five minutes before the Mr. Calhoun's door was kicked in by Det. Borana.   In Chamberlain v. City of White Plains, 960 F.3d 100, 109 n.15 (2nd Cir. 2020) the appellate court held that, "The officers' warrantless entry cannot be justified on the ground that Mr. Calhoun  posed **a risk of harm to a third party** in his apartment.  This case is easily distinguishable from those where a third party is known or believed to be present and appears to be at risk.  See, e.g., City & County of San Francisco v. Sheehan, 575 U.S. 600, 135 S. Ct. 1765, 1775, 191 L. Ed. 2d 856 (2015) (police were informed that a person with

mental illness threatened to kill a social worker); Brigham City v. Stuart, 547 U.S. 398, 406, 126 S. Ct. 1943, 164 L. Ed. 2d 650 (2006) (police observed a violent altercation during which an individual was struck in the face and was "spitting blood"); Anthony v. City of New York, 339 F.3d 129, 131 (2d Cir. 2003) (police responded to a 911 call from a woman inside an apartment who claimed to be at risk of immediate physical injury); Tierney, 133 F.3d at 192 (police called by neighbor reporting a "bad" domestic dispute).

In conclusion, the defendants are not entitled to summary judgment as against Mr. Calhoun's Art. I, § claim of an unconstitutional warrantless search and seizure carried out at his home devoid of any exigent circumstance.

### B. Exigent Circumstances and the Fourth Amendment to the U.S. Constitution

The Second Circuit employs a six factor test for discerning whether police have performed a warrantless search devoid of exigent circumstances that violates the 4th Amendment:

> (1) the gravity or violent nature of the offense with which the suspect is to be charged; (2) whether the suspect is reasonably believed to be armed; (3) a clear showing of probable cause . . . to believe that the suspect committed the crime; (4) strong reason to believe that the suspect is in the premises being entered; (5) a likelihood that the [**25] suspect will escape if not swiftly apprehended; and (6) the peaceful circumstances of the entry.

Harris v. O'Hare, 770 F.3d 224, 234 (2014).

1. Gravity or violent nature of offense to be charged

It is alleged that on April 13, 2016, Mr. Calhoun threatened a person or people in a car at a CVS in Bridgeport, Connecticut and smashed the driver's side window of the car

these people were located; leaving the scene thereafter.[14]   Though there were two different

reports of shots being fired in the vicinity of the CVS Pharmacy in question[15], no shell

casings were found at the CVS.   Further, in the reports given to the police by the alleged

women witnesses in the car attacked at CVS regarding the April 13, 2016 incident, none of

them said that shots were fired during the incident and none said that Mr. Calhoun was shot

or injured.[16]   There is no evidence of the exact proximity of the gunshots to Mr. Calhoun's

location. There is no evidence of the exact proximity of the CVS or the alleged gunshots to

the home of the witness who called into 911 about hearing gunshots near her home. [17]   If the

allegations of threatening behavior are to be credited those actions at most constituted a Class

A misdemeanor Threatening charge.   Smashing the car window could constitute a Class A,

B, or C misdemeanor Criminal Mischief charge.   If the damage to the car window was in

excess of $1,500.00, then one could be charged with a Class D felony Criminal Mischief

charge.[18]   The witnesses who were in the attacked car alleged that Mr. Calhoun had a gun at

the CVS pharmacy.   However, there was no testimony at the suppression hearing as to

whether or not Mr. Calhoun was a prohibited person or had a permit for the gun.   Hence, the

possession of a gun claim does not translate into a probable cause for an arrest on a felony

charge to justify exigent circumstances to undertake a warrantless forced entry into Mr.

Calhoun's home.   The gravity or violent nature of the offenses here do not rise to such a level

as to provide a basis for a finding of exigent circumstances in Mr. Calhoun's case.

---

[14] [02/07/2017 Suppression Hearing Transcript, pp. 99, 108, (Testimony of Detective Dennis Martinez), Plaintiff's
Exhibit "E," Doc. 28].
[15] [Judge Underhill's "Amended Ruling and Order on Motion to Suppress," at pp. 2-3, Plaintiff's Exhibit "B," Doc.
25.]
[16] (2/7/17 Suppression Hearing Transcript, pp. 103-104, Testimony of Det. Dennis Martinez), Plaintiff's Ex. E, Doc.
28.
[17] (2/7/17 Suppression Hearing Transcript, pp. 7-10, Testimony of Off. Laura Azevedo), Plaintiff's Ex. E, Doc. 28.
[18] Plaintiff's Memorandum Opposing the Defendants' Motion for Summary Judgment, ante at page 8.

2.  <u>Whether the suspect is reasonably believed to be armed</u>

The plaintiff does not believe the police had a reasonable belief that he was armed at the time of their arrival at his home sufficient to support the existence of exigent circumstances.  It is reasonably possible that between the alleged breaking of the car window and Mr. Calhoun's arrival at his home the gun could have been thrown into a sewer, a dumpster, or given to a passenger that the other witnesses did not see who got out of the car with the gun before Mr. Calhoun reached his home.  Prior to forcing entry into Mr. Calhoun's home, no one saw him with a gun inside of his home and for at least 20 minutes or so the police did not hear any commotion, ruckus, and sounds coming from Mr. Calhoun's second floor apartment.   The "mere suspicion or probable cause for belief of the presence of a firearm does not, on its own, create urgency." <u>Harris</u>, <u>supra</u>, 770 F.3d at 236 (2d Cir. 2014) and <u>Penree v. City of Utica</u>, 2016 U.S. Dist. Lexis 27668, *42, Affirmed, 694 Fed. Appx. 30 (2d Cir. 2017).

3.  <u>Clearing showing of probable cause to believe Mr. Calhoun committed the crime</u>

There was sufficient evidence to support a clear showing of the existence of  probable cause for the misdemeanor crimes of threatening and criminal mischief.  There was insufficient evidence to support a clear showing of the existence of probable cause to have charged Mr. Calhoun with the felony charge of criminal mischief, discharging a firearm, and illegal possession of a firearm.

4.  <u>Strong reason to believe Mr. Calhoun was in the premises</u>

The plaintiff submits that there was no "strong" reason to believe that Mr. Calhoun was in the premises, a second floor apartment of a multifamily building.  Mr. Calhoun's

mother's black BMW was parked in front of the building shortly after the incident at CVS, the car's hood was warm, and at approximately 10:20 pm the lights were on in Mr. Calhoun's apartment. However, at no time prior to the defendants forcing entry into Mr. Calhoun's mother's home for the twenty (20) minutes the police were outside of that home were there any sounds made by Mr. Calhoun, of gun shots, of distress from anyone, and/or of anyone yelling for assistance made from within the home[19]. It is not uncommon for people to leave lights on in their home when they are not present to ward off burglars. As far as the police knew Mr. Calhoun could have walked down the block to a neighbor's home or gone downstairs to his neighbor's home to seek first aid for the wound the police believed he had because of the presence of blood found in the BMW and at the building. "Moreover, Defendants did not chase [Mr. Calhoun] from a public location or the scene of a crime into his home such that their "hot pursuit" of him justified a warrantless entry. See, Stanton v. Sims, 134 S. Ct. 3, 6, 187 L. Ed. 2d 341 (2013) (describing "hot pursuit" as an immediate or continuous pursuit of a "fleeing felon" from the scene of a crime); United States v. Santana, 427 U.S. 38, 43, 96 S. Ct. 2406, 49 L. Ed. 2d 300 (1976) (finding a true "hot pursuit" is a chase, no matter how long, that is set in motion in a public place)." Penree, supra, 2016 U.S. Dist. LEXIS 27668, at *45-46, Affirmed, 694 Fed. Appx. 30 (2d Cir. 2017). Hence, there was no strong reason to believe that Mr. Calhoun was in his unit at the time.

### 5. The likelihood of escape if not swiftly apprehended

Since the police claim they believed Mr. Calhoun was in the house they could have stationed officers in the front and rear of the multifamily home to prevent him from leaving and obtained a warrant to search the home and/or arrest him. The police simply did not want

---

[19]Affidavit of Shannon L. Calhoun in opposition to summary judgment, ¶'s 4, 13, 16 & 18. [02/07/2017 Suppression Hearing Transcript, p. 36-37 (Testimony of Officer Mark Blackwell), Plaintiff's Exhibit "E," Doc. 28].

to invest the time in that approach.   Moreover, the police were outside of Mr. Calhoun's home at least 20 minutes before they forced entry into his home and the police did station officers outside of the home overnight **after** they forced entry, searched the home and arrested Mr. Calhoun.[20]   Therefore, the likelihood of escape if not swiftly apprehended was virtually non-existent and insufficient to support an objectively reasonable belief that exigent circumstances existed.

### 6.   The peaceful circumstances of the entry

Det. Borona testified that he kicked open the exterior wooden front door of Mr. Calhoun's home, announced they were the police, and then went up the interior steps to the plaintiff's apartment either preceded or immediately followed by a Bridgeport Police Department K-9 and then entered the plaintiff's apartment.   However, co-defendant Det. Martinez testified two times that before Det. Borona decided to breach the doorway he had actually entered the lower exterior door and went up to the second floor before he decided to breach the doorway and before he actually breached the doorway.   This by no means was a peaceful entry.   The front exterior door was kicked in and a Police K-9 trained and used to attack humans very well may have been the first member of the police force to enter the dwelling.[21]   Penree, supra, 2016 U.S. Dist. Lexis 27668, at *46-47, Affirmed, 694 Fed. Appx. 30 (2d Cir. 2017). (Police failed to establish that there was a peaceful entry into the house, where the police forced their way into plaintiff's home by pushing open a door behind which the plaintiff had his foot positioned to prevent the door from opening wider.)

---

[20] See, Plaintiff's Memorandum Opposing the Defendants' Motion for Summary Judgment, ante at pages 10-11. [02/07/2017 Suppression Hearing Transcript, pp. 16 & 27 (Testimony of Officer Mark Blackwell), Plaintiff's Exhibit "E," Doc. 28].

[21] [(2/7/17 Suppression Hearing Transcript, pp. 18 and 60-61, Testimony of Off. Mark Blackwell and Det. Christopher Borona),  Plaintiff's Ex. E, Doc. 28.]

## C.  Exigent circumstances  and danger to a third person

The defendants' claim that exigent circumstances existed to force entry because someone may have been inside of Mr. Calhoun's home with him and in danger because Mr. Calhoun was allegedly enraged, threatened some people, and vandalized a car with a gun some twenty minutes earlier at a separate location from his home should be rejected and summary judgment denied.[22] There was simply no evidence in the record that at the time the police arrived at Mr. Calhoun's home anyone else was in the apartment and in danger.  In United States v. Simmons, 661 F.3d 151, 158 (2d Cir. 2011) the Court rejected an exigent circumstance justification for warrantless entry when a claim that a third party may be at risk was "untethered to any facts in the record".  The same result should attend in Mr. Calhoun's case.

The actions of the defendants in this case are bereft of any constitutional justification for the warrantless forced entry and search of Mr. Calhoun's home; as such he entreats this Court to deny the defendants' motion for summary judgment in toto as to all claims raised by him.

## B.      Qualified Immunity

"Qualified immunity is available to officials so long as their actions do not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  To determine whether defendants enjoy qualified immunity,  the court considers the specificity with which a right is defined, the existence of Supreme Court or Court of Appeals case law on the subject, and the understanding  of a reasonable officer in light of preexisting law.  A plaintiff is not required to cite a case directly on point. Hence, whether the very

---

[22]Plaintiff's Memorandum Opposing the Defendants' Motion for Summary Judgment, ante at pages 11-13.

action in question has not previously been held unlawful is not determinative.  Officers can still be on notice that their conduct violates established law even in novel factual circumstances. However, in the light of pre-existing law the unlawfulness must be apparent." Chamberlain, supra, 960 F.3d at 110. (Citations omitted).

The Second Circuit has a three step test to determine whether a defendant can avail itself of qualified immunity.  The first step is to determine whether plaintiff has alleged a violation of a constitutional right. Secondly, the court must consider if the violated right was clearly established at the time of the conduct. Thirdly, the court must determine if the plaintiff had a clearly established, constitutionally protected right that was violated by the actions of the defendants, the plaintiff must demonstrate that defendants' actions were not objectively reasonable.  Harhay v. Town of Ellington Bd. of Educ., 323 F.3d 206, 211, (2d Cir. 2003).

Mr. Calhoun has alleged a violation of both the federal and Connecticut constitutions by the defendants.[23]

Secondly, Mr. Calhoun's right to be free from a warrantless intrusion into his home by the police was clearly established on April 13, 2016.  Warrantless entry by police into Mr. Calhoun's home was, "the chief evil against which the wording of the Fourth Amendment is directed [as] warrantless searches and seizures inside a home, are "presumptively unreasonable." Payton v. New York, 445 U.S. 573, 585-586, 100 S. Ct. 1371, 63 L. Ed. 2d 639 (1980).

Lastly, Mr. Calhoun's clearly established, constitutionally protected rights were violated by the defendants' acts and omissions that were not objectively reasonable.  The

---

[23] Plaintiff's Amended Conforming Complaint, pgs. 7-8 &14-17.  Doc. 61.

plaintiff asserts that the facts outlined by him in his Amended Complaint, his Local Rule 56 (a-2) Additional Material Facts, pgs. 6-14 dated October 28, 2020, his Affidavit dated October 20, 2020, his Affidavit dated October 18, 2018—Doc. 61, and his Local Rule 56 (a-1) Statement of Material Facts dated October 31, 2018—Doc. 23 state sufficient facts to support his contention that his clearly established, constitutionally protected rights were violated by the defendants' acts and omissions that were not objectively reasonable. Moreover, the criminal trial court's Amended Ruling—Plaintiff's Ex. B, pgs. 9-17, 19-20, 23-28, 29-32 and 36—Doc. 25 further support the plaintiff's position that his clearly established, constitutionally protected rights were violated by the defendants' acts and omissions that were not objectively reasonable.

See Djonbalic v. City of New York, 2000 U.S. Dist. LEXIS 11891, *25 where the Court stated, "In other words, if any reasonable trier of fact could find that the defendants' actions were objectively unreasonable, then the defendants are not entitled to summary judgment. Lennon v. Miller, 66 F.3d [416, 420 (2d Cir. 1995)]; accord, e.g., Carbonell v. Goord, 2000 U.S. Dist. LEXIS 8227, 2000 WL 760751 at *7; Gill v. DeFrank, 2000 U.S. Dist. LEXIS 8836, 2000 WL 270854 at *9." Moreover, the defendants herein are  "only entitled to qualified immunity if, assuming the facts as set forth by [Mr. Calhoun], it was objectively reasonable for [the] defendant[s] to believe, in light of clearly established law and the information [the police] possessed at the time, that [their] warrantless entry into [Mr. Calhoun's] apartment was lawful"). Djonbalic, supra, 2000 U.S. Dist. LEXIS 11891 at *30. Further, given the fact that the defendants in Mr. Calhoun's case assert in their brief at page 11 that their entry into Mr. Calhoun's home was not ferocious and that Mr. Calhoun claims the opposite; i.e., kicked the door in—followed by an attack dog only goes to support his

position that the summary judgment motion should be denied and that the Court should rule that qualified immunity is not available to the defendants.  "Because of the sharp dispute over how aggressively the police behaved when they entered the apartments and the possibility that three or more locked doors separated plaintiffs' apartments from where the gunman was seen entering a building, a reasonable jury could find there were no exigent circumstances justifying forced entry to the plaintiffs' apartments, and that the officers' decision was not "objectively reasonable" or entitled to qualified immunity."  Djonbalic, supra at *33-34.

Summary judgment should be denied where there is a genuine issue of material fact in dispute as to whether a jury could find that the elements of qualified immunity as to the existence of exigent circumstances were lacking.  Walczyk v. Rio, 496 F.3d 139, 163-164 (2nd Cir. 2007).  Accord, Harris, 770 F.3d at 235-241.  No summary judgment will be entered and defendants will not be entitled to qualified immunity where the evidence establishes that there were no exigent circumstances to justify a warrantless search and seizure of a plaintiff's home.

For all of the foregoing reasons and such others as this Court may find, the plaintiff entreats this Court to deny the defendants both summary judgment and qualified immunity as their warrantless search, seizure, and arrest of Mr. Calhoun occurred in the absence of exigency and/or consent which was violative of his rights secured by the 4th and 14th Amendments to the U.S. Constitution, the Constitution of the State of Connecticut, and the other pendant state law claims advanced by the plaintiff within his Amended Conforming Complaint.  Finally, for the reasons advance herein qualified immunity does not protect the defendants in this case.

RESPECTFULLY SUBMITTED,


SHANNON L. CALHOUN
THE PLAINTIFF

BY: _____

**ATTY. ERSKINE D. McINTOSH**
**FEDERAL BAR NO. Ct 9743**
**THE LAW OFFICES OF ERSKINE D. McINTOSH, P.C.**
**3129 WHITNEY AVENUE, SECOND FLOOR**
**HAMDEN, CONN. 06518-2364**
**(203) 787 - 9994**
**FAX (203) 848 - 1213**

**COUNSEL FOR THE PLAINTIFF**


## CERTIFICATION

I hereby certify that on October 28, 2020, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filling. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filling. Parties may access this filing through the Court's system.

_____
**ATTY. ERSKINE D. McINTOSH**

19-1 OBJECTION—SUMMARY JUDGMENT-CALHOUN